1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

REBECCA J. ROSE,

                        Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                        Defendant.

CASE NO.  C09-5716BHS

REPORT AND RECOMMENDATION

 Noted for September 3, 2010

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews,

Secretary of  H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been fully briefed.

After reviewing the record, the undersigned finds the ALJ erred when he relied on the

vocational expert's testimony and concluded plaintiff retained the ability to perform work

requiring a level three of reasoning, which is inconsistent with the ALJ's finding that plaintiff is

limited to simple, routine work tasks.  Accordingly, the undersigned recommends remand of the

matter for further consideration.

REPORT AND RECOMMENDATION - 1

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, Rebecca Rose, is 48 years old.  Tr. 163.  She has obtained her GED, rather than a high school diploma and she attended college for a short time.  She has past relevant work experience as a house cleaner and janitor.  Tr. 49, 62-64.

On or about June 28, 2005, plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act and Supplemental Security Income benefits under Title XVI of the Social Security Act, alleging disability as of December 25, 2002.  Tr. 112-13, 145.  On January 17, 2006, both applications were denied at the initial administrative level.  Tr. 112-13, 145.  Plaintiff did not appeal the denial of her applications.  Tr. 112-13, 145.

On May 23, 2006, plaintiff filed a second application for Supplemental Security Income benefits, and on May 30, 2006, she filed a second application for disability insurance benefits.  Tr. 103-05, 106-11.  In both applications, she alleged a disability onset date of December 25, 2002, the same date alleged in her previous applications.  Tr. 103-06.  On May 31, 2006, plaintiff's application for disability insurance benefits was denied on the basis of res judicata, and a Notice of Disapproved Claim was mailed to plaintiff.  Doc. 20.

On September 18, 2006, plaintiff's application for Supplemental Security Income benefits was denied at the initial level.  Tr. 74-77.  Plaintiff requested reconsideration of her Supplemental Security Income claim.  Tr. 78.  On December 12, 2006, that claim was denied on reconsideration.  Tr. 79-81.  Plaintiff subsequently requested a hearing before an ALJ.  Tr. 82, and on May 21, 2009, the ALJ assigned to the matter conducted a hearing.  Tr. 46-67.  Testimony was taken from plaintiff and from Jennifer Gaffney, a vocational expert.  Tr. 46-67, 33.

The ALJ issued a decision on June 10, 2009, denying plaintiff's claim for Supplemental Security Income benefits under Title XVI.  Tr. 16-32.  Specifically, the ALJ found in relevant part as follows:

REPORT AND RECOMMENDATION - 2

(1)     at step-one of the sequential disability evaluation process, plaintiff had not engaged in substantial gainful activity since May 23, 2006;

(2)     at step-two, plaintiff had "severe" impairments consisting of right ankle tendonosis, tenosynovitis, right shoulder tendonitis, status-post spinal fusion L5-S1, and mood disorder;

(3)     at step-three, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)     after step-three but before step-four, plaintiff had the residual functional capacity to perform sedentary work, except she can occasionally stoop, crouch, crawl, kneel, and climb ramps or stairs; she can never climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to hazards and extreme cold; and she is able to understand, remember, and carry out short, simple instructions;

(5)     at step-four, plaintiff was unable to perform past relevant work; and

(6)     at step-five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy, such as a call out clerk, or a credit card or charge account clerk.  Id.

Plaintiff requested further administrative review of the ALJ's decision, which was denied by the Appeals Council on March 11, 2009, making the ALJ's decision the Commissioner's final decision.  Tr. 6; 20; C.FR. § 416.1481.

On November 17, 2009, plaintiff filed the instant matter with the court for judicial review of the administrative decision.  Doc. 1.  Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings.  Specifically, plaintiff raises the follow five issues:

REPORT AND RECOMMENDATION - 3

(a).  Did the ALJ err by rejecting Dr. Mitchell's opinions about ankle and shoulder limitations?

(b).  Did the ALJ err by rejecting consistent opinions about mental limitations and Dr. Joseph's opinions?

(c).  Did the ALJ err by rejecting plaintiff's testimony?

(d).  Did the ALJ err by failing to follow SSR 96-8p when assessing plaintiff's residual functional capacity (RFC)?

(e).  Did the ALJ err by presenting a defective hypothetical to the VE and did the VE's testimony conflict with the DOT without any supporting explanation?

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999);

20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).  At the hearing in this case, in response to a hypothetical question the ALJ posed, the vocational expert testified that plaintiff could perform the jobs of a call out clerk (Dictionary of Occupational Titles ("DOT") 237.367-014) and credit card or charge account clerk (DOT 205.587-018).  Tr. 17-18. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 30-31.

Plaintiff argues the ALJ erred in finding her capable of performing these two other jobs in the national economy, because the DOT defines the jobs as requiring the ability to perform at a level above the limitation to simple and routine work tasks set forth in the ALJ's RFC assessment and the record does not explain the deviation.  The undersigned agrees.

The DOT's definition of both of the identified jobs requires Level 3 reasoning, which is described as follows:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.

DOT 249.587-018; DOT, Appendix C.

The Tenth Circuit has held that an RFC limitation to simple tasks is "inconsistent with the demands of level-three reasoning."  Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding Level 2 reasoning to be more consistent with simple, routine work tasks) (*citing* Lucy v. Chater, 113, F.3d 905, 909 (8th Cir. 1997) (rejecting contention that claimant limited to following simple instructions could engage in full range of sedentary work, because many unskilled jobs in that category require reasoning levels of two or higher)).  Defendant argues the

reasoning in <u>Hackett</u> is flawed due to a mistake in analyzing the relationship between the educational development levels in the DOT and an RFC limitation to simple and routine work tasks.  The undersigned disagrees.

As recently explained by my colleague, Magistrate Judge Strombom, in <u>Hoffman v. Astrue</u>, Case No. C09-5252RJB, Slip Copy, 2010 WL 1138341 (W.D.Wash.)(3/19/2010), the Ninth Circuit has not addressed this specific issue.  However, a district court addressed a similar issue as follows:

> Key to the present case is the ALJ's finding that [the claimant's] ailments limited her to work involving simple tasks performed at a routine or repetitive pace. [The claimant] asserts that such a restriction is inconsistent with her ability to perform any of the other work as the descriptions of those jobs in the Dictionary of Occupational Titles ("DOT") require a higher reasoning capacity than that allowed by the ALJ's RFC.

> [The claimant] argues that the rub comes from the fact that the other work, which the ALJ pointed to as something which she could perform and, hence, the reason for denying her benefits, requires a level of reasoning beyond that contemplated as "simple, repetitive."

> The DOT describes the . . . job as requiring a reasoning level of two out of a six-point scale. A level two reasoning indicates that the job requires the person to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variables in or from standardized situations." . . . This leaves the question of whether such a reasoning level is consonant with a limitation to simple, repetitive mental tasks.

> The Commissioner argues that it does, but does so by pointing to a separate vocational consideration listed in the DOT-a job's specific vocational preparation ("SVP") score.  The . . . job is considered an unskilled one under the DOT's SVP scores.  The Commissioner contends that because the job had an SVP level of two, which essentially is unskilled work, the vocational expert's opinion does not conflict with the DOT. . . . Unskilled work is defined under Social Security regulations as requiring little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . Because the job duties for [the claimant's] work . . . would be simple ones, the Commissioner posits that the reasoning required to perform those jobs must necessarily be simple as well and, hence, not in conflict with the ALJ's "simple, repetitive" functional restriction.

REPORT AND RECOMMENDATION - 6

1
2
3
4
5
6
7
8
9

The problem for the Commissioner is that she is conflating two separate vocational considerations. Other courts decided that, contrary to the Commissioner's argument here, the SVP level in a DOT listing indicating unskilled work, does not address whether a job entails only simple, repetitive tasks. *See, e.g.*, *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir.1997); *Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D.Okla. Oct.15, 2004); *Hall v. Barnhart*, 2004 WL 1896969, at *3 (D.Me. Aug.25, 2004). A job's SVP is focused on "the amount of lapsed time" it takes for a typical worker to learn the job's duties. . . . A job's reasoning level, by contrast, gauges the minimal ability a worker needs to complete the job's tasks themselves. As one court noted, "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings." *Hall-Grover v. Barnhart*, 2004 WL 1529283, at *4 (D.Me. April 30, 2004). Here, the one vocational consideration directly on point with the limitation contained in the RFC is a job's reasoning level score.

10
11

<u>Meissel v. Barnhart</u>, 403 F.Supp.2d 981, 982-83 (9th Cir. 2005) (footnote and internal

12

citations omitted). The undersigned finds the reasoning of the above district court's opinion

13

persuasive, and hereby adopts it. The undersigned agrees that jobs requiring a reasoning level of

14

3 are, without an adequate explanation for the deviation, incompatible with an RFC limitation to

15

simple, routine, or in this case repetitive, work.

16
17

The court notes that an ALJ may rely on vocational expert testimony that "contradicts the

18

DOT, but only insofar as the record contains persuasive evidence to support the deviation."

19

<u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ, furthermore, has the

20

affirmative responsibility to ask the vocational expert about possible conflicts between her

21

testimony and information in the DOT. <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1091 (10th Cir.

22

1999); SSR 00-4p, 2000 WL 1898704. Thus, before relying on evidence obtained from a

23

vocational expert to support a finding of not disabled, the ALJ must "elicit a reasonable

24

explanation for any discrepancy" with the DOT. <u>Haddock</u>, 196 F.3d at 1087; SSR 00-4p, 2000

25

WL 189704 *1. The ALJ also must explain how the discrepancy or conflict was resolved. SSR

26

00-4p, 2000 WL 189704 *4. Defendant argues the deviation is permissible in this case, but the

REPORT AND RECOMMENDATION - 7

argument is not acceptable, as it was not part of the ALJ's reasoning.  Because the ALJ did not

explain his acceptance of the vocational expert's testimony that plaintiff is capable of performing

a level three job and the RFC limits plaintiff to simple routine work tasks, he erred.

Because this court is recommending that the matter be remanded for further

consideration, this court does not make any further recommendation regarding the balance of

plaintiff's issues, with the expectation that the ALJ will fully evaluate all issues on remand in

light of the standards sets forth above.

## CONCLUSION

Based on the foregoing discussion, the Court should remand the matter to the

administration for further consideration.  Remand for reconsideration of the ALJ's RFC finding,

particularly plaintiff's mental limitations, and step-five analysis will necessarily require the

administration to reconsider the medical evidence and plaintiff's testimony in their entirety.

Accordingly, the other issues presented by plaintiff are essentially moot and were therefore not

specifically addressed in this report.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days from service of this Report and Recommendation to file written objections

thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the

time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration

on September 3, 2010, as noted in the caption.

Dated this 10th day of August, 2010.

_____
J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8